Lorenzo S., Eugenio, José, Carmen Irene y Estela Agripina Iglesias, demandantes y apelantes, *v.* The Jefferson Standard Life Insurance Company, demandada y apelada.

No. 6165.—*Sometido:* Junio 13, 1933. *Resuelto:* Noviembre 14, 1933.

*C. Coll y Cuchí* y *José A. Iglesias* abogado de los apelantes; *R. Castro Fernández,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

La acción ejercitada tiene por objeto anular un procedimiento ejecutivo hipotecario que culminó en la adjudicación del inmueble hipotecado a The Jefferson Standard Life Ins., Co., demandada en este caso y acreedora y demandante en el referido procedimiento. Interpuesta excepción previa a la demanda por el fundamento de no aducir hechos constitutivos de una causa de acción, y declarada con lugar, se dictó sentencia final a moción de los demandantes, quienes interpusieron el presente recurso de apelación.

Como primera causa de acción se alega en la demanda que para garantizar un préstamo de $35,000 con intereses al 8 por ciento anual, los demandantes constituyeron hipoteca a favor de la demandada sobre cierta finca de su propiedad,

obligándose dichos demandantes, mientras estuviese en vigor el préstamo, a mantener asegurada con la demandada la vida de los demandantes Eugenio y José Alfredo Iglesias, por una suma no menor de $5,000 cada uno, y a traspasar las pólizas a la demandada como garantía adicional a la prestataria. Se añade que la demandada ejecutó dicha hipoteca, adjudicándose la finca hipotecada por la suma de $30,000.

Sostienen los apelantes que es ilícita y contraria a la moral pública la cláusula que exige la constitución y traspaso en garantía del seguro de las pólizas sobre las vidas de Eugenio y José Alfredo Iglesias, que por tal motivo la hipoteca está viciada de nulidad y que tal vicio es extensivo al procedimiento ejecutivo. Se arguye que la corte inferior cometió error al no decretar la nulidad de una obligación que a juicio de los demandantes contiene una causa ilícita.

No adolece a nuestro juicio la referida cláusula del vicio que le atribuyen los demandantes. Es ilícito un contrato mediante el cual una persona asegura con una compañía de seguros la vida de otra en la cual no tiene el menor interés, y es ilícito porque es un contrato aleatorio en vez de ser un contrato de indemnización por una pérdida sufrida. En el caso de autos, el contrato de seguro alegado no tiene elemento alguno en que intervenga la suerte o azar. Se exige que dos personas aseguren sus propias vidas y endosen las pólizas a la misma compañía aseguradora como garantía de un préstamo. La jurisprudencia considera lícita tal garantía. *Cammack* v. *Lewis,* 15 Wall. 643; *Warnock* v. *Davis,* 104 U. S. 775; *Finnie* v. *Walker,* 257 Fed. 698. En el caso que nos ocupa, la circunstancia de ser una misma persona el asegurador y el acreedor garantizado, precluye la posibilidad de que el elemento de la suerte haya jugado papel alguno en el contrato. La demandada, desde luego, recibe los beneficios de las primas; pero lejos de derivar alguna ventaja con la muerte de los asegurados, deja, por el contrario, de seguir cobrando dichas primas y pierde además la suma del seguro, la cual tiene que pagar inevitablemente, descontándola del

montante de su crédito. Se dirá que, mientras el préstamo garantizado esté vigente, la demandada, como cesionaria de las pólizas, no haría otra cosa que pagarse a sí misma. Es verdad, pero al pagarse su propio crédito, reduciría el montante del mismo y de la deuda hipotecaria contraída por los demandantes, sufriendo así la demandada una pérdida real con la muerte de los asegurados. Pero aun hay más, aun cuando fuera ilegal la cláusula sobre seguros, no vemos cómo puede ésta afectar la validez de la hipoteca. En este caso tendríamos sencillamente asegurado el pago de un préstamo con dos garantías, una consistente en hipoteca y la otra en prendas. Las dos garantías son completamente separables, y el hecho de que una de ellas fuese defectuosa o ilegal, no afectaría la validez de la otra, como tampoco podría afectar el derecho del acreedor a cobrar el importe del préstamo garantizado.

█ Como segunda causa de acción se alega en la demanda que, habiendo la demandada iniciado procedimiento de ejecución de la hipoteca, se verificó una transacción mediante la cual se desistió del procedimiento ejecutivo y se entregó la posesión del inmueble hipotecado a la demandada con el derecho a cobrar las rentas del mismo para aplicarlas a intereses y capital vencidos y continuar aplicándolas hasta el total pago del préstamo; que de esta manera se novó el contrato original y se alteró la forma de pago; que más tarde la demandada inició otro procedimiento ejecutivo basado en el vencimiento del préstamo según el contrato original que se alega fué novado, y que como consecuencia de dicho procedimiento la demandada se adjudicó el inmueble hipotecado por la suma de $30,000.

Aparece, pues, que la demandada convino con los demandantes en desistir del primer procedimiento ejecutivo a cambio de una garantía adicional, cuya naturaleza no surge claramente de las alegaciones, pudiendo ser un anticresis o una cesión de rentas. Se alega que esto constituye una alteración de la forma de pago, pero, a decir verdad, la única

alteración que aparece de los hechos alegados consiste en que a la demandada se le aseguraba el cobro de ciertos fondos específicos, o sea, las rentas, en vez de tener que depender únicamente de los fondos generales de que pudieran disponer los demandantes. Y esta llamada alteración en la forma de pago no es otra cosa, según se desprende de la demanda, que la concesión de una garantía adicional a la demandada. Es elemental que la concesión de una garantía no constituye por sí sola una novación de la prestación garantizada.

La tercera causa de acción alegada en la demanda expone que la demandada, al liquidar la deuda en el escrito inicial en el procedimiento ejecutivo, incluyó cierta suma por concepto de contribuciones pagadas por la demandada, con intereses sobre dicha suma a razón del 8 por ciento anual. Sostienen los demandantes que estas sumas no formaban parte alguna del crédito hipotecario, y que la corte inferior cometió error al declarar que en un procedimiento sumarísimo pueden cobrarse intereses que no hayan sido específicamente gravados con la hipoteca. La frivolidad de esta contención salta a la vista y nos limitamos a citar las disposiciones del artículo 333 del Código Político como única contestación al error que se atribuye a la corte inferior.

La cuarta causa de acción alegada se basa en que la demandante en el procedimiento ejecutivo hipotecario presentó un memorándum de costas ascendente a $1,000 sin notificar a los allí demandados, añadiéndose dicha suma a la liquidación que sirvió de base a los efectos de la ejecución. Este memorándum fué aprobado por la corte sin intervención de los referidos demandantes. Las alegaciones son, a nuestro juicio, insuficientes. No se alega que las costas no hayan sido garantizadas por la hipoteca fijándose una suma determinada para cubrirlas, como se acostumbra en los préstamos hipotecarios. Tampoco se dice que los demandados en el procedimiento ejecutivo no hayan sido debidamente requeridos para el pago de las costas fijadas y garantizadas por la hipoteca. Esta corte ha declarado que cuando se haya fijado una

suma en el contrato hipotecario y esta suma haya sido garantizada por la hipoteca, debe entenderse que la misma es líquida y ha sido previamente discutida y acordada por las partes, para el caso de que el acreedor se vea obligado a acudir a la vía judicial en cobro de su crédito. *Arsuaga* v. *Corte de Distrito,* 43 D.P.R. 1001; *Soler* v. *Corte de Distrito,* 43 D.P.R. 1010. De acuerdo con esta jurisprudencia no procede la presentación de un memorándum de costas ni hay necesidad de hacer otra notificación al deudor que la que determina la ley en el momento de llevar a cabo el requerimiento.

*Debe confirmarse la sentencia apelada.*